TELEDYNE CONTINENTAL MOTORS v MUSKEGON TOWNSHIP

Docket No. 73758. Submitted March 5, 1985, at Grand Rapids.—
Decided September 17, 1985.

Teledyne Continental Motors filed a petition in the Michigan Tax
Tribunal challenging the propriety of tax assessments levied
against its industrial manufacturing plant by Muskegon Town-
ship for the tax years 1980 and 1981. Teledyne contended that
the true cash value of its land and industrial plant was approx-
imately $4,000,000. Muskegon Township contended that the
true cash value was $11,000,000. After considering all the
testimony and other evidence, a tribunal hearing officer arrived
at a true cash value of $7,000,000. The tribunal adopted and
incorporated the hearing officer's findings of fact and conclu-
sions of law, with some minor exceptions, and entered its
judgment that the true cash value of the property was $7,000,-
000 for each of the tax years 1980 and 1981. Muskegon Town-
ship appealed from the judgment of the tribunal. Teledyne filed
a cross-appeal. *Held:*

1. The tribunal rejected the valuation figures offered by the
parties and adopted its own method after determining that the
replacement cost approach to value was the most appropriate
method to reach true cash value in this case. In doing so the
tribunal ruled that *all* functional obsolescence, *i.e.*, loss in value
brought about by failure or inability to deliver full service, is
eliminated by use of the replacement cost approach. The tribu-
nal erred in so ruling. Some forms of functional obsolescence
are eliminated by the use of the replacement cost approach, but
that fact does not eliminate the necessity for measuring other
forms of functional obsolescence that may exist in any particu-

REFERENCES FOR POINTS IN HEADNOTES
[1, 5] Am Jur 2d, State and Local Taxation § 787.
See the annotations in the ALR3d/4th Quick Index under State
Taxes.
[2, 3, 6, 7] Am Jur 2d, State and Local Taxation §§ 753 *et seq.*
Sale price of real property as evidence in determining value for tax
assessment purposes. 89 ALR3d 1126.
[4] Am Jur 2d, State and Local Taxation §§ 765-767.
See the annotations in the ALR3d/4th Quick Index under State
Taxes.

lar industrial property. The tribunal committed an error of law which requires reversal and remand to the tribunal for a determination of whether the sources claimed as functional obsolescence by Teledyne are in fact eliminated by use of the replacement cost approach.

2. The $455,743 value placed on Teledyne's land by the tribunal was not supported by competent, material and substantial evidence. The tribunal's determination of land value for Teledyne's property must be reversed and the case remanded for redetermination of the value of the land.

3. Any error the tribunal committed by failing to include landscaping costs in determining replacement cost does not require reversal.

4. Muskegon Township's remaining arguments deal with attacks upon the credibility of Teledyne's witnesses. Such attacks upon the credibility of witnesses are beyond review by the Court of Appeals.

Reversed and remanded.

1. TAXATION — APPEAL — TAX TRIBUNAL.

The Court of Appeals has only limited jurisdiction to review decisions of the Michigan Tax Tribunal; the Court is bound by the factual determinations of the tribunal and, where no fraud is alleged, review is limited to the questions of whether the tribunal committed an error of law or adopted a wrong legal principle (Const 1963, art 6, § 28; MCL 205.753[1]; MSA 7.650[53][1]).

2. TAXATION — ASSESSMENT — TRUE CASH VALUE — TAX TRIBUNAL.

It is the duty of the Tax Tribunal to adopt that method of determining the true cash value of property for tax assessing purposes which is most appropriate to the individual case as the particular facts may indicate.

3. TAXATION — INDUSTRIAL PROPERTIES — TRUE CASH VALUE — REPLACEMENT COST APPROACH — FUNCTIONAL OBSOLESCENCE.

The use of the replacement cost approach is one of the accepted methods for determining the true cash value of property for purposes of taxation; by using the replacement cost approach, some forms of functional obsolescence, i.e., loss in value brought about by failure or inability to deliver full service, are eliminated, but the necessity for measuring other forms of functional obsolescence that may exist in any particular industrial property remains.

4. TAXATION — PRESENT VALUE OF PROPERTY — REPLACEMENT COST APPROACH — DEPRECIATION — FUNCTIONAL OBSOLESCENCE.

Depreciation, including physical deterioration, functional obsoles-

cence and economic obsolescence, is subtracted from the replacement cost to determine the present value of property; functional obsolescence is a loss in value brought about by failure or inability to deliver full service, includes any loss of value by reason of shortcomings or undesirable features contained within the property itself, and can be caused by internal property characteristics such as poor floor plan, inadequate mechanical output, or functional inadequacy or superadequacy due to size or other characteristics.

5. TAXATION — TAX TRIBUNAL — ERRORS OF LAW.
A decision of the Tax Tribunal which is not supported by competent, material, and substantial evidence on the whole record results in an error of law within the meaning of the Michigan Constitution (Const 1963, art 6, § 28; MCL 205.753[1]; MSA 7.650[53][1]).

6. TAXATION — TRUE CASH VALUE — BURDEN OF PROOF.
The taxpayer has the burden of proof to establish the true cash value of his property (MCL 205.737[3]; MSA 7.650[37][3]).

7. TAXATION — TAX TRIBUNAL — ASSESSMENTS — TRUE CASH VALUE — TOWNSHIP APPRAISALS.
The Tax Tribunal is required to make its own finding of true cash value in arriving at its determination of a lawful property assessment and where no evidence is presented from which the Tax Tribunal can determine the true cash value of a taxpayer's properties it may not automatically affirm a township assessment of the value of such properties.

*Parmenter, Forsythe, Rude, Van Epps, Briggs & Fauri* (by *John M. Briggs, III*), for petitioner.

*Potuznik, Spaniola, Wilson & Anderson, P.C.* (by *William P. Spaniola*), for respondent.

Before: HOOD, P.J., and MACKENZIE and R. D. DUNN,* JJ.

PER CURIAM. Teledyne Continental Motors (petitioner) appealed as of right and Muskegon Township (respondent) cross-appealed from the Tax Tribunal's determination of value of petitioner's real

---

* Circuit judge, sitting on the Court of Appeals by assignment.

property located in Muskegon Township. The property is the site of an industrial manufacturing plant operated by petitioner, containing approximately 855,700 square feet and located on approximately 113.680 acres of land.

The petitioner contended in the Tax Tribunal that the true cash value of its land and industrial plant was approximately $4,000,000. Respondent contended that the true cash value was $11,000,-000. After considering all the testimony and other evidence, the hearing officer arrived at a true cash value of $7,000,000, considerably above the value offered by petitioner and considerably below that offered by respondent. The Tax Tribunal, in an opinion and judgment dated August 29, 1983, adopted and incorporated the hearing officer's findings of fact and conclusions of law, with some minor exceptions, and these appeals followed.

The questions presented for our determination are whether the Tax Tribunal committed an error of law in determining the true cash value of petitioner's property and whether the Tax Tribunal's determination was supported by real evidence.

Both parties agreed that the highest and best use for the Teledyne property was for general industrial purposes. Petitioner's expert as to value, Elden Nedeau, presented an appraisal in which he incorporated three traditional approaches to value: cost, income and market. The tribunal determined that the most appropriate method to arrive at the true cash value of the subject property was the cost approach. This approach reaches value by determining replacement value, minus depreciation, plus land value. Mr. Nedeau determined a replacement cost of $23,212,746, from which he subtracted 84% for depreciation. The 84% depreciation figure consisted of 52.5% for physical deterio-

ration, 11.5% for functional obsolescence and 20% for economic obsolescence. To this he added a land value, which in his opinion was $198,940, to reach a true cash value of $4,000,000.

Respondent's witnesses adopted a $25,000,000 replacement cost, to which a 58.75% depreciation was applied consisting of 48.75% for physical deterioration and 10% for economic obsolescence. No figure was included for functional obsolescence. Respondent then added a land value of $455,743 to reach its claimed value of $11,000,000.

The tribunal adopted petitioner's replacement cost figures, but disallowed any consideration for functional obsolescence, finding that the use of a replacement cost approach made an adjustment for functional obsolescence improper. This resulted in a depreciation percentage of 72.5%. The tribunal then accepted respondent's land value figure of $455,743, and added a wiring estimate not included in Nedeau's appraisal to reach its $7,000,-000 figure.

The standard of review of the Tax Tribunal's determination of value is a limited one. Review of Tax Tribunal determinations, when fraud is not alleged, is limited to the questions of whether the tribunal committed an error of law or adopted a wrong legal principle. *Tatham v City of Birmingham,* 119 Mich App 583; 326 NW2d 568 (1982); *First Federal Savings & Loan Ass'n of Flint v City of Flint,* 104 Mich App 609; 305 NW2d 553 (1981), *rev'd on other grounds* 415 Mich 702; 329 NW2d 755 (1982); Const 1963, art 6, § 28; MCL 205.753; MSA 7.650(53). Thus, on appeal from a ruling of the tribunal, this Court is bound by the factual determinations of the tribunal and may properly consider only questions of law. *Consolidated Aluminum Corp, Inc v Richmond Twp,* 88 Mich App 229; 276 NW2d 566 (1979).

The tribunal is not required to accept the valuation figures or the approach to valuation advanced by either the taxpayer or the assessing unit. It is the duty of the tribunal to adopt that method which is most appropriate to the individual case as the particular facts may indicate. *Consumers Power Co v Big Prairie Twp,* 81 Mich App 120; 265 NW2d 182 (1978). In the present case, the tribunal rejected the valuation figures offered by the parties and adopted its own method after determining that the replacement cost approach to value was the most appropriate method to reach true cash value in this case.

Petitioner first claims that the tribunal erred in ruling that functional obsolescence should not be included as an element of depreciation when the replacement cost approach is used to determine true cash value, *i.e.,* that the tribunal adopted a wrong appraisal principle. Thus, the determination is a legal one and properly before this Court.

In rejecting petitioner's claim for a depreciation deduction for functional obsolescence, the tribunal reasoned as follows:

"In using a cost approach to value, the appraiser must consider a reduction in the cost (new) for accrued depreciation due to all causes-physical deterioration, functional obsolescence and economic obsolescence. The distinction between the reproduction cost and replacement cost methods, based upon the above definitions, means to this Hearing Officer that when an appraiser utilizes the replacement cost method he should adjust for accrued depreciation, and the depreciation allowance should *not* include an amount for functional (utility—either deficient or excess) obsolescence as the replacement cost method has already been adjusted for utility, and use of current materials and design. See footnote* on the bottom of page 262, *The Appraisal of Real Estate, supra,* 'the dollar difference between repro-

duction cost and replacement cost usually indicates lack of functional utility." (Emphasis in the original.)

However, the 8th edition of *The Appraisal of Real Estate* (American Institute of Real Estate Appraisals, 1983)[1] indicates that, while *some* forms of functional obsolescence are eliminated by the use of the replacement cost approach, this does not eliminate the necessity for measuring other forms of functional obsolescence that may exist in any particular industrial property. The tribunal in this case ruled that *all* functional obsolescence is eliminated by use of the replacement approach. The tribunal, by not distinguishing between the type of functional obsolescence that is eliminated by use of the replacement cost approach, committed an error of law which requires reversal.

The use of the replacement cost approach is one of the accepted methods for determining true cash value. *Clark Equipment Co v Leoni Twp,* 113 Mich App 778, 781; 318 NW2d 586 (1982). To determine the present value of property, depreciation is subtracted from replacement cost. Depreciation includes physical deterioration, functional obsolescence and economic obsolescence. *Fisher-New Center Co v State Tax Comm,* 380 Mich 340; 157 NW2d 271 (1968). Functional obsolescence is a loss in value brought about by failure or inability to deliver full service. It includes any loss of value by reason of shortcomings or undesirable features contained within the property itself. *Appraisal of Real Estate* (8th ed), p 449. Functional obsolescence can be caused by internal property characteristics, such as poor floor plan, inadequate mechanical output, or functional inadequacy or superadequacy due to size or other characteristics. *Id.*

---

[1] The hearing officer relied on the out-of-date 6th edition.

Clearly, the replacement cost approach does eliminate the need to calculate some types of functional obsolescence. By definition, replacement cost eliminates functional obsolescence due to excess construction or superadequacy. However, a determination of other sources of functional obsolescence, not caused by excess construction, must at least be considered in the replacement cost approach. In the present case, the tribunal ruled that all functional obsolescence is eliminated by use of the replacement cost approach. This amounts to an adoption of the wrong appraisal principle. The tribunal should have specifically determined whether the sources claimed as functional obsolescence by the petitioner are in fact eliminated by use of the replacement cost approach. This is primarily a factual determination, based upon a determination of fairness in each particular case, and we therefore do not presume to suggest a proper result. On remand, the tribunal may well determine that the elements of functional obsolescence claimed by petitioner are not proper factors to be considered in calculating replacement cost.

Petitioner also claims that the $455,743 value placed on its land was not supported by competent, material and substantial evidence. We agree. It is an error of law within the meaning of the Michigan Constitution if a decision of the Tax Tribunal is not supported by competent, material and substantial evidence. *Kern v Pontiac Twp,* 93 Mich App 612, 620; 287 NW2d 603 (1979). The taxpayer has the burden of proof to establish the true cash value of its property. MCL 205.737(3); MSA 7.650(37)(3). However, the tribunal cannot merely accept the assessment placed upon the rolls by the assessing authority. *Consolidated Aluminum Corp v Richmond Twp, supra,* p 232. Petitioner argues

that the tribunal's acceptance of respondent's valuation of the land was in error because the valuation did not state an independent valuation conclusion but merely relied upon reports and appraisal cards prepared by others.

Mr. Wood, Supervisor and Assessor for Muskegon Township, testified for respondent that he obtained his land values from comparable industrial sites in various industrial parks similar in nature to the subject property. He indicated that his comparable land sales were based solely upon appraisal cards that were not prepared by him personally. In addition, because the initial appraisal had been done in 1976, he increased the values based on what seemed fair and reasonable without doing an individual investigation to determine if the values had in fact increased in Muskegon Township during the years 1976 through 1979.

Because the township witness did not state an independent valuation conclusion based upon a personal investigation of comparable sales, his conclusion as to land value is not supported by competent, material and substantial evidence. Therefore, the tribunal erred in accepting that valuation in determining true cash value. MCL 211.27; MSA 7.27 requires an assessor in determining the value of property to consider the following:

"In determining the value the assessor shall also consider the advantages and disadvantages of location; quality of soil; zoning; existing use; present economic income of structures, including farm structures; present economic income of land if the land is being farmed or otherwise put to income producing use; quantity and value of standing timber; water power and privileges; and mines, minerals, quarries, or other valuable deposits known to be available in the land and their value."

In *Consolidated Aluminum Corp v Richmond Twp, supra,* this Court reversed a decision of the tribunal where it relied solely on the assessment of the township's assessor because the assessment did not comply with MCL 211.27; MSA 7.27. The Court concluded that, because the township's witness merely relied upon figures prepared by others, there was no evidence presented upon which the tribunal could have determined the true cash value of the property in question. *Consolidated Aluminum, supra,* p 234. The valuation testimony offered by Mr. Wood suffered a similar lack of substantiating evidence. Thus, the tribunal's determination of land value for the petitioner's property must be reversed and the case remanded for redetermination of the value of petitioner's land.[2]

Respondent has also raised several claims of error. None merit reversal or remand, but we will discuss them briefly. Respondent's first claim is that the tribunal should have included landscaping costs in determining replacement cost. It is clear that landscaping costs should have been included in total replacement cost. The petitioner's expert appraiser testified that he had erroneously omitted landscaping costs from his calculations. However, the failure to include landscaping costs is inconsequential in this case. Landscaping costs only amount to approximately $10,000. In the tribunal's determination of true cash value it rounded up its valuation figure by some $46,000 to place true cash value at $7,000,000. Thus, any

---

[2] The true cash value of land testified to by Mr. Nedeau, the petitioner's expert, must also be rejected. Mr. Nedeau admitted that his comparable sales were for vacant properties, not ongoing industrial facilities. Thus, the figures offered by Mr. Nedeau as to the value of the land may have understated its value. Thus, on remand the tribunal cannot merely accept the figures as offered by Mr. Nedeau but must take other evidence to establish the true cash value of the real property involved.

error in failing to include landscaping does not require reversal.

Respondent also argues that the tribunal did not add a sufficient amount for buss duct wiring in replacement cost. The testimony regarding the wiring was contradictory. Respondent's witness said there was 50,000 linear feet of buss duct wiring in the plant. Mr. Nedeau opined that that estimate was overly generous. In determining that there was only 10,860 linear feet the tribunal obviously chose to reject respondent's figure as unreliable. This is a factual finding which is binding upon this Court. *Consolidated Aluminum Corp v Richmond Twp, supra,* pp 231-232. For the same reason, we reject respondent's challenge of the depreciation deduction allowed by the tribunal as being overly generous. Respondent's argument, in sum, is simply that petitioner's witness should not have been believed, an attack upon credibility which is beyond review by this Court.

Reversed and remanded to the Tax Tribunal for further proceedings consistent with this opinion. We do not retain jurisdiction.