CONTINENTAL CABLEVISION OF MICHIGAN, INC v CITY OF
ROSEVILLE

Docket No. 88698. Submitted December 3, 1986, at Lansing. Decided
February 18, 1987. Leave to appeal applied for.

Petitioner, Continental Cablevision of Michigan, Inc., provides
cable television service in the City of Roseville. Petitioner's
system consists of three primary components: (1) the main
cables which run along utility poles or are buried underground;
(2) the "house drops," which run from the main cables into
individual residences and end at the television sets; and (3) the
"converters," which interface the television sets with the cable
system. Petitioner was assessed a personal property tax on the
house drops for the years 1982, 1983 and 1984. Continental
petitioned the Tax Tribunal for review. The Tax Tribunal
upheld the assessments. Petitioner appealed.

The Court of Appeals *held*:

The Tax Tribunal's decision that the house drops are person-
alty belonging to the petitioner rather than fixtures or person-
alty belonging to the customers was supported by competent,
material and substantial evidence.

1. The test for determining whether or not an item is a
fixture, and therefore real property for taxation purposes,
includes three factors: (1) annexation to the realty, either
actual or constructive; (2) adaptation or application to the use
or purpose of that part of the realty to which it is connected or
appropriated; and (3) intention to make the article a permanent
accession to the realty.

2. The evidence indicated that petitioner did not intend for
the house drops to become fixtures.

Affirmed.

1. Taxation — Appeal — Tax Tribunal.

The Court of Appeals has only limited jurisdiction to review

References
Am Jur 2d, Fixtures §§ 5 *et seq.;* 14 *et seq.*
Am Jur 2d, State and Local Taxation §§ 695, 787, 805.
See the annotations in the Index to Annotations under Fixtures;
Taxes.

decisions of the Michigan Tax Tribunal; the Court is bound by the factual determinations of the tribunal and, where no fraud is alleged, review is limited to the questions of whether the tribunal committed an error of law or adopted a wrong legal principle.

2. ADMINISTRATIVE LAW — TAXATION — TAX TRIBUNAL — EVIDENCE — CONSTITUTIONAL LAW.

Decisions of the Tax Tribunal must be supported by competent, material and substantial evidence on the whole record; substantial evidence must be more than a scintilla of evidence, though it may be substantially less than the preponderance of evidence.

3. FIXTURES — REAL PROPERTY — TAXATION.

The test for determining whether or not an item is a fixture, and therefore real property for taxation purposes, includes three factors: (1) annexation to the realty, either actual or constructive; (2) adaptation or application to the use or purpose of that part of the realty to which it is connected or appropriated; and (3) intention to make the article a permanent accession to the realty.

4. TAXATION — TELECOMMUNICATIONS — CABLE TELEVISION — HOUSE DROPS.

House drops, which are cable connections from a main cable to individual houses, are the property of the cable television service provider for purposes of personal property taxation.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Gregory L. McClelland* and *Jeffery V. Stuckey*), for petitioner.

*La Barge, Dinning, Lyons & Greve, P.C.* (by *Ronald H. Greve*), for respondent.

Before: BEASLEY, P.J., and R. B. BURNS and G. D. LOSTRACCO,* JJ.

R. B. BURNS, J. Petitioner appeals from an adverse decision of the Michigan Tax Tribunal which upheld petitioner's personal property tax assess-

* Circuit judge, sitting on the Court of Appeals by assignment.

ments for the tax years 1982, 1983, and 1984. We affirm.

Petitioner provides cable television services in the City of Roseville. Petitioner's system consists of three primary components: (1) the main cables which run along utility poles or are buried underground; (2) the "house drops," which run from the main cables into individual residences and end at the television sets; and (3) the "converters" which interface the television sets with the cable system. It is the status of the house drops which is the subject of this appeal.

Briefly, petitioner's position is that the house drops are the property of the individual subscribers and, alternatively, that house drops are fixtures and, therefore, taxable to the realty owners as real property. Respondent takes the position that the house drops are personalty belonging to petitioner and included the house drops in petitioner's personal property tax assessment. The Tax Tribunal agreed with respondent, notwithstanding an earlier Tax Tribunal decision which held that house drops are fixtures. See the unpublished opinion of the Michigan Tax Tribunal, *Continental Cablevision of Michigan, Inc v City of Lansing,* (Docket Nos. 53491, 64619, decided September 30, 1982).

The status of house drops for tax purposes presents a question of first impression. Where fraud is not alleged, we review decisions of the Tax Tribunal to determine whether the tribunal committed an error of law or adopted a wrong legal principle. *Teledyne Continental Motors v Muskegon Twp,* 145 Mich App 749, 753; 378 NW2d 590 (1985). We are bound by the tribunal's factual determination and consider only questions of law. *Id.* However, a decision of the Tax Tribunal which is not supported by competent, material, and substantial

evidence is an error of law. *Connors & Mack Hamburgers, Inc v Dep't of Treasury,* 129 Mich App 627, 629; 341 NW2d 846 (1983). "Substantial evidence" is more than a scintilla of evidence, but less than a preponderance of evidence. *Holy Spirit Ass'n for the Unification of World Christianity v Dep't of Treasury,* 131 Mich App 743, 757; 347 NW2d 707 (1984).

If the house drops are fixtures, then for tax purposes they are a part of the realty, MCL 211.2; MSA 7.2, and taxable to the owner of the realty, MCL 211.3; MSA 7.3. If they are personalty, however, the house drops would be taxable to the owner of the house drops. MCL 211.13; MSA 7.13.[1]

In determining whether an item is a fixture, three factors are emphasized:

> (1) Annexation to the realty, either actual or constructive;
> (2) Adaptation or application to the use or purpose of that part of the realty to which it is connected or appropriated; and
> (3) Intention to make the article a permanent accession to the realty. *Morris v Alexander,* 208 Mich 387; 175 NW 264 (1919)[;] *Peninsular Stove Co v Young,* 247 Mich 580; 226 NW 225 (1929). The intention which controls is that manifested by the objective, visible facts. The permanence required is not equated with perpetuity. It is sufficient if the item is intended to remain where affixed until worn out, until the purpose to which the realty is devoted is accomplished or until the item is superseded by another item more suitable for the purpose. See *San Diego Trust & Savings Bank v San Diego County,* 16 Cal 2d 142; 105 P2d 94 (1940). [*Michigan National Bank, Lansing v City of Lansing,* 96 Mich App 551, 554; 293 NW2d 626 (1980), affirmed by equal division 414 Mich 851; 322 NW2d 173 (1982).]

---

[1] But see MCL 211.9(f); MSA 7.9(f), which exempts various items of household personalty.

The Tax Tribunal found that the first two criteria were met by the house drops. That finding is not in dispute on appeal. Rather, the controlling issue is the third factor. The tribunal found that petitioner did not intend that the house drops become fixtures. We believe the record supports this conclusion.

When house drops are installed, the customer is charged $14.95. However, it costs petitioner approximately $40 in labor and materials to make the installation. By comparison, the charge to reconnect service to a residence with an existing house drop is $10. When service is disconnected, the house drops are not removed unless the customer so requests. Rather, service is turned off at the main cable line and the customer must turn in his converter.

Also in the financial area is petitioner's treatment of the house drops costs for accounting purposes. The labor and material costs are capitalized and depreciated over a period of time. Petitioner treats the house drops as capitalized costs for federal and state tax returns. An accounting expert opined that petitioner's accounting methodology is inconsistent with the claim that petitioner does not own the house drops.

Next, the service agreement that petitioner enters into with its customers provides for continuing control of the entire system to be exercised by petitioner. Paragraph 2 of the agreement grants petitioner the right to install, maintain, repair and replace "any and all components of the system." Paragraph 5 grants exclusive right to repair and modify the system to petitioner. That paragraph also provides that the customer may not disturb, tamper with or reroute "any component of the system."

However, it should be noted that, while the

agreement explicitly provides in a number of places for petitioner's right to remove the converter upon termination of service, there is no explicit provision governing removal of the house drops. As noted above, house drops are not routinely removed. However, this does not compel the conclusion that the house drops are fixtures. Rather, the economics may be such that it is advisable to leave the house drops in. The house drops do not appear to have any known salvage value. Thus, it would be uneconomical to remove them. Second, since a future resident may desire service, or the same customer may wish to reconnect in the future, and the installation cost is greater than the installation charge, it could be more economical to leave the house drops in.

In view of petitioner's accounting treatment of the house drops and the fact that customers have no right of control over the house drops, we conclude that there is competent, material and substantial evidence to support the tribunal's conclusion that the house drops are personalty belonging to petitioner rather than fixtures or personalty belonging to the customers.

Affirmed. No costs, a question of public importance involved.