# STATE OF MICHIGAN

# COURT OF APPEALS

AUTOZONE STORES INC./AUTO ZONE, #2137

Petitioner-Appellee,

UNPUBLISHED
June 23, 2015

v

CITY OF WARREN,

Respondent-Appellant.

No. 320213
Tax Tribunal
LC No. 00-451812

Before: RIORDAN, P.J., and DONOFRIO and BECKERING, JJ.

PER CURIAM.

In this tax appeal, respondent, City of Warren, appeals as of right the tribunal order ruling in favor of petitioner, AutoZone Stores, Inc./AutoZone # 2137, regarding its property tax petition in the small claims division. We affirm.

## I. FACTUAL BACKGROUND

The disputed property is an AutoZone store, located at 30880 Dequindre Road, Warren, Macomb County. On May 15, 2013, petitioner filed a petition in the small claims division, contending that the property was classified as commercial, real property, and that while the current taxable value was $266,580, that was an excessive valuation. Respondent replied that the taxable value was correct, and that the true cash value of the property was $533,160. Petitioner, however, posited that the true cash value of the property was $362,000, and that the taxable value was $181,000.

Both parties submitted evidence, including several comparables. Respondent also submitted a detailed valuation report, wherein it asserted that the interest to be valued was fee simple, and that the highest and best use of the property was as a retail building. An issue that arose before the hearing was whether respondent's comparables—that represented properties with leases in place—were appropriate considerations in determining the true cash value of the property.

A hearing occurred, after which the referee released its proposed opinion finding in favor of petitioner. The referee found that the appropriate method for determining the true cash value of the property was the sales approach, and it concurred in petitioner's assessment that leased fee transactions were not predicated on market rent. The referee found that respondent's reliance on leased fee transactions were not reliable indicators of value.

-1-

Respondent filed several exceptions to the proposed opinion, including an argument that petitioner's attorney, Peter Ellenson, was not a certified appraiser and that the referee should not have accepted his appraisal report. Respondent also contended that the hearing referee improperly failed to consider its leased comparables. However, the tribunal found the exceptions to be without merit and assessed the true cash value of the property as $362,000 and the taxable value as $181,000. The tribunal adopted the proposed opinion in full. Respondent now appeals.

## II. COMPARABLES

### A. STANDARD OF REVIEW

"A proceeding before the tribunal is original and independent and is considered de novo." MCL 205.735a(2). This Court's review of a final decision of the tribunal is limited. *Detroit Lions, Inc v City of Dearborn*, 302 Mich App 676, 691; 840 NW2d 168 (2013). "Unless fraud is alleged, an appellate court reviews the decision for a misapplication of the law or adoption of a wrong principle." *Podmajersky v Dep't of Treasury*, 302 Mich App 153, 162; 838 NW2d 195 (2013) (quotation marks and citation omitted). The tribunal's factual findings are conclusive if they are supported with competent, substantial, and material evidence on the whole record. *Detroit Lions, Inc*, 302 Mich App at 691. "Substantial evidence is any evidence that reasonable minds would accept as sufficient to support the decision. Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Id.* at 691-692 (quotation marks and citation omitted). We review *de novo* issues of statutory interpretation. *Id.* at 692. The appellant bears the burden of proof in an appeal from the tribunal. *Podmajersky*, 302 Mich App at 162.

### B. BACKGROUND LAW

Property may not be taxed in excess of 50 percent of its true cash value. Const 1963, art 9, § 3. True cash value "means the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale, and not at auction sale except as otherwise provided in this section, or at forced sale." MCL 211.27(1). "True cash value is synonymous with fair market value." *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 389; 576 NW2d 667 (1998).

"[T]he petitioner has the burden to establish the true cash value of property." *President Inn Properties, LLC v Grand Rapids*, 291 Mich App 625, 631; 806 NW2d 342 (2011). Yet, "the Tax Tribunal has a duty to make an independent determination of true cash value." *Id.* The three traditional methods of determining true cash value are: (1) the cost-less-depreciation approach (cost approach); (2) the sales-comparison or market approach (sales approach); and (3) the capitalization-of-income approach (income approach). *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland*, 437 Mich 473, 484-485; 473 NW2d 636 (1991). "The Tax Tribunal is under a duty to apply its expertise to the facts of a case in order to determine the appropriate method of arriving at the true cash value of property, utilizing an approach that provides the most accurate valuation under the circumstances." *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 389. "All three approaches should be used whenever possible[.]" *Meadowlanes*, 437 Mich at 485. Regardless of which method is employed, "the final value determination must represent the usual price for which the subject property would sell." *Id.*

Also fundamental to the concept of true cash value is the principle of "highest and best use." *Edward Rose Bldg Co v Independence Twp*, 436 Mich 620, 633; 462 NW2d 325 (1990); *Detroit/Wayne Co Stadium Auth v Drinkwater, Taylor, & Merrill, Inc*, 267 Mich App 625, 633; 705 NW2d 549 (2005). The "highest and best use" is defined as "the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose or is vacant, so long as there is a market demand for such use." *Detroit/Wayne Co Stadium Authority*, 267 Mich App at 633 (quotation marks and citation omitted); *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 285; 730 NW2d 523 (2006). See also *Edward Rose Bldg Co*, 436 Mich at 633 ("It recognizes that the use to which a prospective buyer would put the property will influence the price which the buyer would be willing to pay."). A highest and best use determination requires the use to be legally permissible, financially feasible, maximally productive, and physically possible. *Detroit Lions, Inc*, 302 Mich App at 697.

## C. ANALYSIS[1]

Respondent first contends that the tribunal failed to determine the highest and best use of the property. However, respondent argued below that the highest and best use of the property was a retail store, a fact that appears to be uncontested. See *Blazer Foods, Inc v Rest Props, Inc*, 259 Mich App 241, 252; 673 NW2d 805 (2003) ("A party may not take a position in the trial court and subsequently seek redress in an appellate court that is based on a position contrary to that taken in the trial court."). While the tribunal did not explicitly use the term highest and best use, it found that the property was classified as commercial. Moreover, implicit in the tribunal's opinion and its reliance on comparables is that it considered the highest and best use to be a retail store. The parties ostensibly accepted this as sufficient, as neither raised exceptions to the proposed opinion based on the referee's failure to provide further detail regarding the highest and best use of the property.[2] Moreover, the issue respondent raises on appeal is that the tribunal improperly rejected its comparables with leases in place. See *City of Lansing v Hartsuff*, 213 Mich App 338, 351; 539 NW2d 781 (1995) (An "issue [i]s not preserved for appeal" when it is "not set forth in [appellant's] statement of the questions involved."). Thus, we find respondent's argument to be without merit.

Respondent does not dispute that the subject property was valued as fee simple. A fee simple interest is "absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat." *The Appraisal of Real Estate* (11th ed, p 137). Nor does respondent dispute that its comparables, which the tribunal declined to consider, were comprised of leased interests.

Nevertheless, respondent cites several unpublished cases, and cases from other jurisdictions, to support its contention that leases are value-influencing factors that can be

---

[1] On appeal, respondent relies, to a large extent, on nonbinding unpublished cases of this Court and caselaw from other jurisdictions, which are not binding on this Court. See MCR 7.215(C); *Hiner v Mojica*, 271 Mich App 604, 612; 722 NW2d 914 (2006).

[2] Respondent only objected to *petitioner's* failure to focus on the highest and best use.

relevant to determine the true cash value of property. Respondent also cites to *Meadowlanes, supra*. Although *Meadowlanes* did not involve leases, our Supreme Court generally found that intangible interests such as subsidies can affect the usual selling price of property, and, thus, they are proper considerations in the valuation process. *Id.* at 495. See also *Antisdale v City of Galesburg*, 420 Mich 265, 285; 362 NW2d 632 (1984) ("Tax benefits, like deed restrictions, and zoning classifications, of course, are not real property. Nevertheless, such incorporeal items, not taxable in and of themselves, can increase or decrease the value of real property, and that amount should be reflected in the assessment process." (Citation omitted)).

In the instant case, the tribunal credited petitioner's argument "that leased fee transaction[s] are not predicated on market rent, but rather upon the amount the business can afford to pay based on its operations. In that regard, lease fee transactions are not true sales, but more of a financial tool, as such they are not a reliable indicator of value." Yet, the tribunal did not reject respondent's comparables under the sales comparison approach merely because they were leased interests. Rather, it reasoned that the comparables were not exposed to the market conditions and pressures, as the days on the market column did not show that the comparables had spent any time on the market.

The tribunal expounded that respondent's income approach was flawed because it provided only scant information regarding the comparables, and respondent did not provide the leases. The tribunal concluded that "[p]etitioner correctly testified that in commercial leasing the landlord makes concessions (i.e. build to suit, and pays certain expenses), and since no leases were provided it is impossible to determine the terms of the lease." Significantly, the tribunal found that a fatal flaw in respondent's assessment was that the assessor seemingly made no adjustments beyond averaging the total amount of rent paid, that respondent selected a nine percent capitalization rate for no apparent reason, and failed to introduce any documentation to substantiate the other listed fees such as vacancy and management.

Thus, the tribunal evaluated respondent's leased comparables and found them to be inadequate. *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 391 ("[I]f the analysis of a comparable sale is flawed, the valuation for the subject property is also flawed."). In disregarding respondent's leased comparables, the tribunal did not adopt a wrong legal principle. "By definition, a property that is subject to one or more leases is no longer a fee simple estate. Thus, if the sale of a leased property is to be used as a comparable sale in the valuation of the fee simple estate for another property, the sale can only be used if reasonable and supportable market adjustments for the difference in rights can be made." *The Appraisal of Real Estate* (12th ed), p 431. Contrary to respondent's suggestion, the tribunal did not hold that leased properties could never be used in valuing a fee simple property under any circumstances. Rather, the tribunal relied on the fact that the subject property right was different than the property right valued in respondent's comparables, appropriate adjustments had not been made, and there was insufficient information regarding the leased transactions.[3] Had respondent's assessor made the

---

[3] Respondent fails to raise any argument that appropriate adjustments to its comparables were made. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). Because respondent highlights no evidence that it made the appropriate adjustments to its leased

appropriate adjustments or provided verifying information, the comparables may have been relevant in determining the true cash value of the subject property.

The tribunal also characterized leased fee transactions as a "financial tool." The tribunal reasoned that such transactions are predicated on the amount a business can afford to pay, based on its operations, for the use of the property. Respondent contends that this was indicative of the tribunal's confusion about the difference between a lease and a sale leaseback, as only the latter is typically a financing tool. Contrary to respondent's argument on appeal, there is no error warranting reversal.

A lease is "a contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usu. rent." *Black's Law Dictionary* (10th ed); *NACG Leasing v Dep't of Treasury*, 495 Mich 26, 29 n 10; 843 NW2d 891 (2014). A sale leaseback is "[t]he sale of property on the understanding, or with the express option, that the seller may lease the property from the buyer, usu. immediately after the sale." *Black's Law Dictionary* (10th ed). Nothing in the tribunal's findings indicate that it was conflating the two terms. Nor has respondent highlighted any evidence to demonstrate that leases cannot be financing tools, as are sale leasebacks.

Respondent also references the concepts of "existing use" and the "present economic income" under MCL 211.27(1), ostensibly to support its contention that the tribunal erred in disregarding its leased comparables in favor of valuing the property as if vacant and available for sale. According to respondent, "present economic income" is a consideration when calculating the true cash value of the property, and "present economic income" includes the consideration of leases. Thus, leases should have been considered when determining the true cash value of the property.

However, MCL 211.27(1) defines true cash value as "the usual selling price at the place where the property to which the term is applied is *at the time of assessment*, being the price that could be obtained for the property at private sale, and not at auction sale except as otherwise provided in this section, or at forced sale." (Emphasis added). The statute also provides a nonexhaustive list of factors that the assessor must consider when determining the true cash value, including:

> [T]he advantages and disadvantages of location; quality of soil; zoning; *existing use*; *present economic income of structures*, including farm structures; present economic income of land if the land is being farmed or otherwise put to income producing use; quantity and value of standing timber; water power and privileges; minerals, quarries, or other valuable deposits not otherwise exempt under this act known to be available in the land and their value. [MCL 211.27(1) (Emphasis added).]

comparables, its reliance on cases from other jurisdictions to demonstrate that leases or sale-leasebacks are indicative of the fee simple value is unpersuasive.

Importantly, MCL 211.27(5) provides that "[a]s used in subsection (1), 'present economic income' means *for leased or rented property* the ordinary, general, and usual economic return realized from the lease or rental of property negotiated under current, contemporary conditions between parties equally knowledgeable and familiar with real estate values." (Emphasis added.)

Consistent with the plain language of the statute, the true cash value is determined "at the time of assessment," and the assessor shall consider the "present economic income" "for leased or rented property" at that time. MCL 211.27(1) and (5). See *Danse Corp v City of Madison Hts*, 466 Mich 175, 182; 644 NW2d 721 (2002) ("Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written."). Yet, respondent highlights no evidence that petitioner's property was subject to a lease at the time of the assessment. Because the property was not being leased at the time of the assessment, there was no present economic income to be considered. In other words, MCL 211.27 does not bolster respondent's argument that the tribunal erred in declining to consider its leased comparables.

Respondent also contends that the tribunal erred in failing to consider the "existing use" of the property. It suggests that the tribunal improperly valued the property as if vacant and available at the time of sale when relying on petitioner's comparables 1, 2, 4, and 6, as opposed to relying on respondent's leased comparables. However, the tribunal acknowledged petitioner's evidence that the current use was an auto-parts store, and that it was a freestanding retail building. Moreover, while MCL 211.27(1) directs an assessor to consider the existing *use* of the properties in determining the true cash value, consideration of the existing *user* or owner is not permitted. See *First Fed S & L Ass'n of Flint v City of Flint*, 415 Mich 702, 703; 329 NW2d 755 (1982) ("[T]he constitution and the General Property Tax Act require that property tax assessments be based on market value, not value to the owner[.]"). As our Supreme Court has recognized, "[n]oticeably absent from the statutory definition of 'cash value' and those enumerated factors which an assessor must consider is any reference to the identity of the person owning an interest in the property or whether there are other parcels which are owned by the same taxpayer." *Edward Rose Bldg Co*, 436 Mich at 640.

Valuing the property as vacant and available for sale, as opposed to occupied, constituted a proper valuation of the fee simple interest. As discussed *supra*, the true cash value is based on the "usual selling price . . . at the time of assessment." MCL 211.27(1). It is undisputed that the interest to be valued in this case was fee simple, which is the value of the property when sold unencumbered, as opposed to the leased interest, which is the value of the property when sold with a lease in place. Because a fee simple interest is unencumbered, it is sold without a leasehold or tenant in place. See *Edward Rose Bldg Co*, 436 Mich at 633 ("Land is appropriately valued as if *available* for development to its highest and best use, that most likely legal use which will yield the highest present worth." (Emphasis added; quotation marks and citation omitted)).

Thus, the tribunal did not adopt a wrong principal when valuing the property as if unoccupied and available for sale. See, e.g., *Meijer, Inc v City of Midland*, 240 Mich App 1, 3; 610 NW2d 242 (2000) ("All the experts who testified before the Tax Tribunal agreed that the true cash value of the subject property must be determined by finding the market value of the fee simple interest in the property, based on the assumption that the subject property is vacant and

for sale."). As our Supreme Court has emphasized, "The Constitution requires assessments to be made on property at its cash value. This means not only what may be put to valuable uses, but what has a recognizable pecuniary value inherent in itself, and not enhanced or diminished according to the person who owns or uses it." *Edward Rose Bldg Co*, 436 Mich at 640-641 (quotation marks and citation omitted). Thus, even if the subject property is a fully occupied and operating auto-parts store, those characteristics are incidents of ownership, not measures of value inherent to the property itself.[4]

Accordingly, we find no error warranting reversal in the tribunal's valuation of the property.

## III. LICENSED APPRAISER

### A. PRESERVATION & STANDARD OF REVIEW

Next, respondent raises several challenges to Ellenson's role in the proceedings. To be preserved for appeal, a party must raise the issue before the tax tribunal. *Toaz v Dep't of Treasury*, 280 Mich App 457, 463; 760 NW2d 325 (2008). An objection to evidence admitted in a tax proceeding must be timely. *Zenith Indus Corp v Dept of Treasury*, 130 Mich App 464, 467; 343 NW2d 495 (1983). Here, due to the absence of the hearing transcript, it is impossible to verify whether respondent challenged Ellenson's qualifications, and whether that issue was addressed or decided at the hearing. Nevertheless, respondent raised at least a partial challenge to Ellenson's qualifications in its exceptions to the proposed opinion, and the tribunal addressed this issue. Moreover, "[t]his Court may review an unpreserved issue if it is an issue of law for which all the relevant facts are available." *Vushaj v Farm Bureau Gen Ins Co of Michigan*, 284 Mich App 513, 521; 773 NW2d 758 (2009).

In addition to the standards set forth *supra*, we "may review the tribunal's rulings regarding evidentiary issues if they involve errors of law." *Georgetown Place Co-op v City of Taylor*, 226 Mich App 33, 239; 572 NW2d 232 (1997).

### B. ANALYSIS

Pursuant to the Revised Judicature Act, MCL 600.8411(2):

In hearings before the small claims division, witnesses shall be sworn. The judge shall conduct the trial in an informal manner so as to do substantial justice between the parties according to the rules of substantive law but shall not be bound by the statutory provisions or rules of practice, procedure, pleading, or evidence, except provisions relating to privileged communications, the sole object

---

[4] Although respondent cites to *Teledyne Contl Motors v Muskegon Twp*, 145 Mich App 749, 758 n 2; 378 NW2d 590 (1985), that case is not binding. MCR 7.215(J)(1). Furthermore, given the cursory treatment the panel provided to the issue, in a footnote, it has little persuasive value.

of such trials is to dispense expeditious justice between the parties. There shall be no jury nor shall a verbatim record of such proceedings be made.

In its exceptions to the proposed opinion, respondent contended that the hearing referee improperly accepted Ellenson's appraisal report even though he did not have an appraiser's license, and that the report had several errors and oversights that further implicated Ellenson's competency. The tribunal found that there was no prohibition against a party, its attorney, or its representative from creating a valuation disclosure, and that there was no evidence that Ellenson improperly acted as an appraiser.

Consistent with its arguments below, respondent again highlights the fact that Ellenson is not an appraiser. Pursuant to MCL 339.2607(1), "A person shall not act as or offer to act as an appraiser unless licensed under this article or exempt from licensure under this article." However, consistent with the tribunal's findings, there is no indication that Ellenson improperly acted as an appraiser, nor that petitioner purported to offer evidence from an appraiser. Rather, petitioner was offering valuation evidence.[5]

Respondent also claims that, as petitioner's attorney, Ellenson should not have acted as a witness because it violated Michigan Rules of Professional Conduct (MRPC) 3.7. Pursuant to MRPC 3.7, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness" except under certain circumstances. Respondent also contends that the tribunal mistakenly accepted and characterized Ellenson's "arguments" at the hearing as "testimony."

However, respondent's arguments are meritless for several reasons. First, no transcript of the hearing was prepared. See MCL 205.762(2) ("A formal record of residential property and small claims division proceedings is not required."); Mich Admin Code R 792.10265. Without the hearing transcript, it is impossible for this Court to review or verify the nature of Ellenson's participation at the hearing. Further, respondent does not address why it failed to request a transfer of the case before the entire tribunal, where proceedings are recorded, if it discerned the evidentiary issues were of such importance. See MCL 205.764(2) ("A party or an intervening party may request a transfer of a matter to the tribunal for hearing and decision."); Mich Admin Code R 792.10273. See also MCL 205.746(2) ("A proceeding before the tribunal shall be officially reported."). As we have recognized, error warranting reversal cannot be one "to which the appellant contributed by plan or negligence." *Bloemsma v Auto Club Ins Ass'n*, 190 Mich App 686, 691; 476 NW2d 487 (1991). Because "[i]n an appeal from an order of the Tax Tribunal, the appellant bears the burden of proof[,]" *Podmajersky*, 302 Mich App at 162, respondent's argument must fail.

---

[5] A "valuation disclosure" is defined as "documentary or other tangible evidence in a property tax contested case that a party relies upon in support of the party's contention as to the true cash value of the subject property or any portion thereof and contains the party's value conclusions and data, valuation methodology, analysis, or reasoning." Mich Admin Code, R 792.10237. Respondent highlights no authority for the proposition that such evidence must be prepared by a certified appraiser.

Most dispositive is that the tribunal came to an independent determination of the true cash value of the property based on competent, material, and substantial evidence. *President Inn Properties, LLC*, 291 Mich App at 631. The tribunal's opinion, particularly its detailed analysis of the comparables and the valuation approaches, reveals a thorough consideration and rejection of respondent's valuation approach. The issues of dispute, such as the consideration of leased comparables, were adequately presented in the parties' written evidence and addressed in the tribunal's written opinion. The tribunal weighed the evidence before it, after its independent review of the comparables. See *Drew v Cass Co*, 299 Mich App 495, 501; 830 NW2d 832 (2013) ("The weight to be accorded to the evidence is within the Tax Tribunal's discretion." (Quotation marks and citation omitted)). The tribunal neither shirked its duty to render an independent determination of the true cash value of the property, *Great Lakes Div of Nat'l Steep Corp*, 227 Mich App at 389, nor did it fail to determine the most accurate valuation under the individual circumstances of the case, *President Inn Props*, 291 Mich App at 631. Therefore, respondent's argument is meritless.

## IV. CONCLUSION

The tribunal did not adopt a wrong legal principle when declining to consider respondent's leased comparables, and its decision was supported with competent, material, and substantial evidence. We have reviewed all other claims and find them meritless. We affirm.


/s/ Michael J. Riordan
/s/ Pat M. Donofrio
/s/ Jane M. Beckering

-9-